*MARGARET COLSTON V. AMANDA H. BISHOP.

1. FAILURE TO ANSWER IN ACTION TO SET ASIDE A DEED, DOES NOT ESTOP ONE FROM ASSERTING INTEREST IN THE LOT AS HEIR-AT-LAW.

Where an action is brought by A. against B. and her grantees, to set aside a deed made to her by A. purporting to convey the interest of A. in a certain lot of land, on the ground that it has been fraudulently procured, and the petition sets out that B., said grantee, had a life-estate in said lot under the will of her husband, and that the remainder therein being undevised had passed by descent to A. and C., her sister, and C. was also made a party defendant, but filed no answer, and took no part in said case, but no relief was asked against her by the petition, or by the answers of any of the defendants, which answers were mere defenses denying the fraud and any title in plaintiff at the making of the deed, a judgment of the court in such case finding against the plaintiff, and dismissing the bill on the ground that she had no interest in the lot at the time of the conveyance, will not estop C. from asserting her interest in such lot as heir-at-law of the testator after the death of B., the life-tenant.

2. WHERE WIFE RECEIVES MERELY A LIFE ESTATE, REMAINDER PASSES BY DESCENT.

It appearing from the will construed in this case, that it was clearly the intention of the testator to limit the estate given to his wife, in the lot in question to a life estate, and that no disposition was made of the remainder therein, it passed under the statutes of descent to his heirs at law; and though owing to the unskillfulness of the draftsman, reference is made to the residue of the estate that might remain after the payment of debts as if he contemplated a disposition of it, yet the whole will is to be taken together, and if it appears that only a life estate in the lot is devised, and no person named to take the remainder, it must receive such construction.

ERROR to the Court of Common Pleas of Hamilton county.

SMITH, J.

The plaintiff in error seeks to reverse a judgment rendered against her by the court of common pleas, and the errors assigned are, that it was against the evidence, and that a new trial was refused her.    A bill of exceptions was taken on the overruling of the motion for a new trial, which contains all of the facts and evidence as agreed to by the parties.

The action below was one brought by Mrs. Colston to recover the possession of the one undivided half of a part of a lot on Second street, in this city.    The premises were owned at the time of his death, March 15, 1855, by Thomas F. Bascoe, an old colored man.    He left a will executed March 9, 1855, six days before his death.    He left no issue surviving him, and his only heirs at law, under the statutes then in force, were his sister, Mrs. Colston, the plaintiff, and Margaret F. Gates, Ann E. Cole and Mary L. Harrison, children of a deceased sister, Mrs. Harrison.    At the time of his death, the testator was living with a second wife, Mildred F. Bascoe, who died several years ago.

At the time of the making of the will, and at his death, Bascoe, in addition to this lot, owned some personal property.    The value of this does not appear in the agreed statement, but we are referred by counsel for defendant in error to the testimony set out in a bill of exceptions, taken in the case of Cole v. Bishop, and made part of the bill of exceptions in this case.    If it were competent for us to look at that evidence, it would appear that the only personal property owned by Bascoe, was $25 worth of household furniture, and that he was in debt on his lot in about the sum of $500.    It *does* appear from the agreed statement, that after his death his widow, as executrix of his will, commenced a proceeding in the probate court of this county to sell the lot.    It was not sold, however, under such proceedings, which seem to have been abandoned.

*This case was distinguished by the common pleas, in Alexander v. Mendenhall, 1 Dec. 655, 658, 659.

17    C C    1

The defenses made to this action by Mrs. Bishop, the defendant, (who claims under conveyances from Mildred Bascoe and her grantees), were, 1. That Mildred took a fee in the lot under the will of her husband, and therefore that Mrs. Colston had no title to it; and 2. That she is barred and estopped from asserting a title to it as heir of Bascoe, by reason of the rendition of judgments in the two cases mentioned in the answer, to which Mrs. Colston and defendant's grantors were parties, and in which the court held, that Mrs. Bascoe did take a fee simple in this lot under the will of her husband. And the two questions submitted to us for decision are, 1. Is she so estopped? And 2. If not, what estate did Mildred take under the will? And we speak of them in this order.

The bill of exceptions shows, that on the 10th day of December, 1866, Ann E. Cole, one of the nieces of Thomas F. Bascoe, and her husband, filed their petition in the Superior Court of Cincinnati (case No. 20,655), against Mildred F. Bascoe, Mrs. Gates and her husband, Mrs. Colston and her husband, John W. and Jos. W. Bishop, and J. S. Pollock. It alleges substantially the making of the will by Bascoe, and a devise thereby of this lot to Mildred for life, and that Mrs. Colston and the nieces had inherited the same subject to said life estate.

It further stated that on May 2, 1866, Mildred, fraudulently and without any consideration therefor, procured and induced the plaintiffs, Cole and wife, to execute to her a deed for all of their interest in said lot, and that Mary L. Harrison, one of said nieces, by like fraudulent statement and conduct by Mildred, was induced to join in the conveyance, and without any consideration therefor—and that she had since died, and that her interest therein had passed to Mrs. Cole and Mrs. Yates, her sisters. That on the 25th day of May, 1866, Mildred had conveyed the lot to the Bishops for a wholly inadequate consideration, and that they had full knowledge of the title when they received the conveyance, and with knowledge of the facts in the case, and that they still owed her for the purchase money, and that their deed was void as against the plaintiffs. Pollock was made a party as trustee of Mildred, and as having money of hers in his hands. The prayer of the petition was, that their deed, and that of Mary L. Harrison to Mrs. Bascoe, be set aside as fraudulent, and held for naught.

To this petition the Bishops answered, alleging that they bought from Mildred in good faith and without knowledge of plaintiff's claim, and paid full value therefor. They deny all fraud by her, or by them, and aver that Mrs. Cole had no interest in the land to convey, and that the grantors executed the deed understandingly; and they pray that their title to the lot may be quieted *as against Cole and wife.* Mildred Bascoe also answered, averring that she took a fee under the will, and denying all fraud.

In this action, Colston and wife were served with process, but filed no answer, and so far as the record shows, took no part whatever in the case. It was tried, and by consent it would seem of those litigating, was first heard on the question whether Mildred took a fee simple under the will; and the court holding that she did, the petition was dismissed with costs, and this judgment was affirmed at general term, on a proceeding in error prosecuted by Cole and wife.

The other of the two suits spoken of, was commenced on the same day that the first one was. It was an action by Yates and wife against the same parties to set aside the deed made *by them* to Mildred, and the pleadings in the two cases were identical, except that after the judgment in the Cole case, by a supplemental answer filed by the Bishops, they set up that judgment as bar to the Yates action, and a judgment was also rendered in that action for the defendants.

On this state of facts, do these judgments, or either of them, estop Mrs. Colston in this action?

Though made a party in both, she had not the slightest legal interest in either. The object of the plaintiffs in each case, and the relief prayed for, was the setting aside of a deed to which she was not a party, and the granting or refusal of the prayer would in no wise affect her interest in the land, if she had any. Neither the petitions, or the answers of any of the defendants asked any

relief as against her, and no reason is assigned, or can be shown, why she was made a defendant. If she had seen proper to demur upon the ground that the petition did not state any case of action against her, the demurrer should have been sustained. But not having done this, we think it clear, that if she had examined the petition and other pleading, and had seen that no one of the plaintiffs or defendants sought any relief as against her, she might well and safely have declined to file any answer, or take any action in the case, for there was nothing to which she could properly answer, the statement in the petition as to the inheritance of the lot being mere matter of inducement, entirely unnecessary to have been set out. The answers filed were mere defenses, and set up reasons why the deeds of the plaintiffs in those actions should not be set aside. It is true that one defense was, that Mildred Bascoe took a fee simple in the land under the will of her husband, and therefore plaintiffs having no interest in it, it was unnecessary to set aside these deeds. But so far as these actions were concerned, they only affected the rights of those against whose claims the defense was made. And the court was not called upon or authorized to construe the will of Bascoe, except as it was necessary to settle the questions raised in the case, and made on the issues between the contending parties. It is true Mrs. Colston may have felt much concern in the decision of the court, as to the estate given to Mildred Bascoe by the will, for whether *she* had any interest in the land, depended upon this —but *her title* was not involved in this litigation, and she would have had precisely the same interest in the case and in its result, if she had not been a party, as she had being an improper party.

The persons who are estopped by a judgment in an action in which they have been named as parties, and brought before the court, are those who are directly interested in the subject-matter in issue—who have a right to make a defense, control the proceeding, or appeal from the judgment. Strangers are persons who do not possess these rights. ·1 Waite's Actions and Defenses, 788; Bigelow on Estoppel, 59.

Applying this rule· to the facts in this case, how does it stand? Could Mrs. Colston in any way have controlled these proceedings? . Had she a right to file an answer, either denying or admitting the allegations of the petition; or if so, what possible effect could either have had on the real parties in interest? Could she have prevented a settlement of the controversy between Cole and wife and the Bishops, if they had agreed to set aside or uphold the deed, or, as before said, in what way did it concern her? Could she have appealed from any decision in the case? If it did not affect her interest, she could not, and we think it did not; and though in deciding the case the court put it upon a ground, which as a precedent, might have weight thereafter, in another action, it settled no right of hers—and the reason upon which the court found in favor of defendants in that case, is immaterial so far as Mrs. Colston was concerned.

Other reasons might be assigned for·this conclusion. To make a judgment a bar, the parties must be adversary parties, and the estoppel must be mutual. And it is doubtful whether either was so in this case. We are brought then to the decision of the question, what estate in this land Mildred Bascoe took under the will of her husband.

The will in question was evidently drawn by one not skilled in such matters, and who has failed to express the intention of the testator with clearness. It is wholly without punctuation marks, and the sentences so run together, that it is difficult at first sight to arrive at a satisfactory conclusion as to its meaning. So far as it is necessary to state it, it reads as follows :

"My will is first that my funeral charges and just debts shall be paid by my executors hereinafter named the residue of my estate and property which shall not be required for the payment of my just debts funeral charges and the expenses attending the execution of this my will and the administration of my estate I give and devise to my beloved wife Mildred F. Bascoe all my household furniture I do also bequeath to the said Mildred F. Bascoe my beloved wife the

entire exclusive and undivided use of my dwelling house situated in Cincinnati where I now reside to have and to hold the same during her natural life without giving any security."

On looking at this will, we are of the opinion that the purpose of the testator was, that after his debts and the expenses of his estate were paid, that his wife was to have his household furniture, either absolutely or for her life, and to have the lot for her life, and that the remainder in the land was not devised, but passed to his heirs at law, under the statute of descents.

It is argued by the counsel for defendant in error, that she took a fee-simple in the land, and that the will can be so divided into paragraphs, and punctuated, as to show that such was the probable intention of the testator—and this is done by making the first paragraph provide for the payment of the debts, and the second and third to read as follows:

"2. The residue of my estate and property which shall not be required for the payment of my just debts, funeral charges and the expenses attending the execution of this my will, and the administration of my estate, I give and devise to my beloved wife, Mildred F. Bascoe."

"3. All my household furniture I do also bequeath to the said Mildred F. Bascoe, my beloved wife, the entire, exclusive and undivided use of my dwelling house situated in Cincinnati where I now reside, to have and to hold the same for and during her natural life without giving any security."

That is, by the second paragraph as thus divided, he gives to his wife the whole of the residue of his estate remaining after the payment of his debts, *absolutely*, and by the third, gives her all the household furniture (it being probably the only personal estate owned by him), and a life estate in the house and lot, and as counsel argue, these last provisions are inserted simply to make sure that she shall have the full title to all of his estate after the debts are paid.

But this construction cannot, we think, properly be given to this will; for it does not at all do away with the confusion and uncertainty apparent upon its face—it is a forced and artificial division of it, and leaves the sentence, "all my household furniture," without any words of devise connected with it. But the strong objection to such a construction is, that read the will as we may, there still remains in clear and explicit language, the limitation of the estate of his wife in the lot, to a life estate. Unquestionably, if the last provision had not been contained in it, there would be enough in the former part to give to her the whole of this residue, absolutely; but being there, it must have due weight, and seems to exclude the idea that he intended to give her other than a life estate in the lot.

We are not unmindful of the rule that intestacy as to any part of the estate is not to be presumed, and particularly is this the case where there is language used in a will which *seems* to refer to the residue; but still, if it appears on a fair construction of the whole will, that any part of the estate is not devised, it must be so found. That such is the law seems clear from the authorities. In the case of Gilpin v. Williams, 17 O. S., 396, it is held that " the rule that a testator will not be presumed to have died intestate as to any part of his estate, *to which his attention seems to have been directed.* applies *only* in the construction of a will, the language of which is of *equivocal import.*" And in the case of Barr v. Wick, 19 O., 328, it was held, that "if the language of the testator in a residuary clause of his will, will admit of a limited application, as well as one of a more general character, a court of equity will give it that construction which will be most favorable to the heir at law."

My own idea is, that where the testator in this will speaks of the *residue* of his estate, it is of a disposition he proposes to make *out* of it, and not *of* the *whole of it.* The addition of a single word to the will, and a punctuation that seems reasonable and natural, would remove all obscurity, and make the meaning apparent. It would then read thus:

"My will is, first that my funeral charges and just debts shall be paid.

"Of (or out of) the residue of my estate and property which shall not be required for the payment of my just debts and funeral charges, and the expenses attending the execution of my will, and the administration of my estate, I give and devise to my beloved wife, Mildred F. Bascoe, all my household furniture. I do also bequeath to the said Mildred F. Bascoe, my beloved wife, the entire, exclusive and undivided use of my dwelling house, situated in Cincinnati, where I now reside ; to have and to hold the same during her natural life without giving any security."

But whether this reading be the correct one or not, we are clear that on *any* proper construction of the language, it must be held that the wife only took a life estate in this lot.

Our only doubt as to the correctness of this conclusion is, that a court of high authority, and for whose adjudications we have great respect, has expressed a different opinion. This has induced us to consider the question with greater care, but in view of the language of the will itself, and of the holding of the Supreme Court of the state, on substantially similar expressions, some of which decisions have been announced since the adjudication referred to, we feel compelled to hold, that the judgment of the common pleas court in this case should be reversed, and a new trial awarded. ·

Mr. Rockhold (of Foraker, Black & Rockhold), and Peter Keam, for plaintiff in error.

P. A. Reece, for defendant in error.    ·

